he induced her not to take proceedings to enforce her legal rights by compelling him to accept the amount tendered and give a satisfaction of the mortgage, or not to attend the sale and there protect her rights, by representing that, after he had obtained title, he would reconvey to her upon receiving the amount tendered; that the plaintiff, believing the representation made to her that he would reconvey, took no proceedings to compel him to accept the amount tendered, permitted him to purchase at the sale, and, after he had acquired title, she again tendered the amount due, principal, interest, and costs of the foreclosure action to that time for a reconveyance, which he refused to give; and that her equity in the property, over and above all incumbrances thereon, at the time the sale took place, was $84,000, which equity has been acquired by the defendant by reason of the representations made to the plaintiff, and upon which she acted.

A court of equity would be of little use, if, upon such facts, it refused to exercise its equitable powers to aid a party who had been thus deprived of his property. It may be that the plaintiff is not entitled to all the relief asked. She was represented in the foreclosure action by an attorney, and had notice of all the proceedings therein. The judgment in that action undoubtedly binds her as to the amount found due, including costs and disbursements. It is a final adjudication upon that subject; but it does not determine the question of her right to redeem or get some relief from the defendant who refuses to keep an agreement which results in her being deprived of $84,000. The sale upon the facts alleged is at least voidable, and can be vacated and set aside if necessary as part of the relief in this action. I think, however, the facts alleged in the complaint are sufficient to show in the plaintiff a right of redemption from the mortgage, and the action should be treated as one for that purpose, and the plaintiff can have such incidental relief as may be necessary to accomplish the object. Casserly v. Witherbee, 119 N. Y. 522, 23 N. E. 1000. She may have judgment giving her the right to redeem upon payment of the judgment in the foreclosure action and the expenses of the sale.

For these reasons, the judgment and order appealed from are reversed, with costs, and the motion for judgment denied, with $10 costs. All concur.

---

DE LUNA v. UNION RY. CO. OF NEW YORK CITY.

(Supreme Court, Appellate Division, First Department. February 5, 1909.)

1. DEATH (§ 85*)—ACTION FOR WRONGFUL DEATH—DAMAGES.

　　The damages to be awarded in an action for negligent death under Code Civ. Proc. § 1904, limiting the damages to a fair and just compensation for the pecuniary injuries resulting from decedent's death to the persons for whose benefit the action is brought, must be determined from the evidence, which is, as a general rule, limited to the age, sex, general health, and intelligence of decedent, the situation and condition of the survivors, and their relation to decedent.

　　[Ed. Note.—For other cases, see Death, Cent. Dig. § 111; Dec. Dig. § 85.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. DEATH (§ 98*)—ACTION FOR WRONGFUL DEATH—DAMAGES.

The next of kin to decedent, an unmarried woman 32 years old, consisted of two married sisters and a brother, two of whom were her seniors, for whose support she had never contributed. For three years before her death decedent was employed as a seamstress at a salary of $9 a week. During the time she lived with a married sister she paid $4 a week for her board. She left no estate. The funeral expenses were paid by the sister, who as administratrix sued for her death. *Held*, that a verdict for the amount of the funeral expenses was improperly set aside as inadequate, in the absence of any showing that the jury were improperly influenced.

[Ed. Note.—For other cases, see Death, Cent. Dig. § 124; Dec. Dig. § 98.*]

Patterson, P. J., dissenting.

Appeal from Trial Term.

Action by Jennie L. De Luna, as administratrix, against the Union Railway Company of New York City. From an order setting aside as inadequate the verdict for plaintiff and granting a new trial, defendant appeals. Reversed, and verdict reinstated.

Argued before PATTERSON, P. J., and McLAUGHLIN, INGRAHAM, CLARKE, and HOUGHTON, JJ.

Bayard H. Ames (Vine H. Smith, on the brief), for appellant.
Herbert R. Limburg, for respondent.

McLAUGHLIN, J. This action was brought to recover the damages caused by the death of the plaintiff's intestate. At the opening of the trial, the defendant, through its counsel, admitted that the death of the intestate was caused by the defendant's negligence, so that the only question litigated was the pecuniary loss sustained by the next of kin. Upon this issue there was but little evidence. It consisted solely of the testimony of the plaintiff and her husband, from which it appeared that the intestate at the time of her injury was 32 years of age and unmarried; that her next of kin consisted of the plaintiff, a brother, and another married sister, all of them, with the exception of one sister, her senior; that for about three years immediately prior to the accident she had been employed as a seamstress at a salary of $9 per week, was assistant to the foreman, and next in line of promotion in the department where she worked when the accident occurred; that during all that time she had lived with the plaintiff and her husband, paying $4 a week for her board; that she left no estate whatever; and that the funeral expenses amounted to $189.75, which were paid by the plaintiff. The jury rendered a verdict for $189.75, which, on motion of plaintiff's counsel, the court set aside as inadequate and granted a new trial, and the defendant appeals.

The damages to be awarded in case of death caused by the wrongful act, neglect, or default of another are limited to "a fair and just compensation for the pecuniary injuries, resulting from the decedent's death, to the person or persons, for whose benefit the action is brought." Code Civ. Proc. § 1904. And this must be determined from the evidence which, as a general rule, is limited to "the age and

sex, the general health, and intelligence of the person killed, the situation and condition of the survivors, and their relation to the deceased." Houghkirk v. President, etc., D. & H. C. Co., 92 N. Y. 219, 44 Am. Rep. 370. The damage in such case, being regulated by statute, which creates the cause of action, is expressly limited to such a sum as the jury deems to be a fair and just compensation for the pecuniary injuries sustained by the persons for whose benefit the action is brought. In construing this statute, the Court of Appeals, speaking through Judge Finch in the Houghkirk Case, said:

"Recognizing the generally prospective and indefinite character of these damages, and the impossibility of a basis for accurate estimate, it allows a jury to give what they shall deem a just compensation. * * * The damages to the next of kin in that respect are necessarily indefinite, prospective, and contingent. They cannot be proved with even an approach to accuracy, and yet they are to be estimated and awarded, for the statute has so commanded. But even in such case there is and there must be some basis in the proof for the estimate, and that was given here and always has been given. Human lives are not all of the same value to the survivors."

In the case now before us, the jury, having fully considered all the evidence which was offered bearing upon the loss sustained by the persons for whose benefit the action is brought, found that it was the amount of the verdict rendered. There is nothing to show, nor is it even suggested, that they were improperly influenced or controlled by anything except the evidence in the case and a proper discharge of their duties. I am unable, therefore, to see how the court can say that the verdict is inadequate. So far as appears, the deceased had never contributed anything to the support of her next of kin, or any of them, nor does it appear that she was able to do so had she been so disposed. On the contrary, it is fairly to be inferred, inasmuch as she left no estate whatever, that her earnings were barely sufficient for her own support and maintenance. Both sisters were married, and there was a legal obligation on their husbands to support them. Her brother was her senior, and his earning capacity must have been equal to, if not greater than, hers. The case, therefore, is to be distinguished from one brought to recover the damages sustained by the death of one who is supporting, or upon whom rests the obligation of support and maintenance. "We are not," as was said by Mr. Justice Ingraham in Terhune v. Cody Contracting Co., 72 App. Div. 1, 76 N. Y. Supp. 255, "now engaged in ascertaining the value of human life, nor in punishing a person whose negligence has caused the death of a human being. We are bound by the express provision of this statute which limits a recovery to the pecuniary loss caused to the next of kin by the decedent's death; and, while we cannot say that the death of a particular human being has caused his next of kin no pecuniary loss, we are equally unable to say in the case of the killing of a young child under six years of age that the death of the child has caused pecuniary loss to the child's parents. In such a case the question under proper instructions must be left to a jury, and their verdict, in the absence of any evidence to justify an inference that it was rendered under a misconception of the question submitted to them or influenced by prejudice or sympathy, or other influences than that of a desire to fairly estimate the loss sustained, should not be interfered with."

Here the jury estimated the pecuniary loss at $189.75. This happened to be the exact amount of the funeral expenses paid by the plaintiff, and very likely was the basis of the jury's award. It was their estimate of the loss sustained by the persons for whose benefit the action was brought, and upon the facts set out in the record, I do not see how it can be said their estimate is erroneous. The case was fairly submitted to the jury, and no errors were committed during the trial which justified an interference with the verdict. Upon the record as it comes to us it seems to me the action of the trial justice in setting aside the verdict was not justified.

If I am correct in this, then the order appealed from must be reversed and the verdict reinstated, but under the circumstances without costs.

All concur, except PATTERSON, P. J., who dissents.